1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9  Ishmael Abdul-Haqq,              )    No. CV-08-74-PHX-EHC (LOA)
                                    )
10          Petitioner,             )    **REPORT AND RECOMMENDATION**
                                    )
11 vs.                              )
                                    )
12 A.D.W. Cluff, et al.             )
                                    )
13          Respondents.            )
                                    )
14 _____ )

15         This matter arises on Petitioner's Petition for Writ of Habeas Corpus by Person in

16 State Custody Pursuant to 28 U.S.C. § 2254.  (docket # 1)  Respondents filed an Answer

17 (docket # 9) to which Petitioner replied.  (docket # 10)  Because Petitioner's Reply expanded

18 on his claims and added several new claims, the Court permitted Petitioner to supplement his

19 Petition with those claims and ordered additional briefing.  (docket # 11)   Respondents

20 subsequently filed a Supplemental Answer (docket # 12) to which Petitioner has not replied

21 and the deadline has passed.

22 **I. Factual and Procedural Background**

23         The following events gave rise to Petitioner's challenged conviction and sentence.

24     **A.  Factual Background**

25         In late September or early October 2001, Donald Hines, Jr. and his girlfriend, Latisha,

26 where visiting friends at the Roeser Apartments in Phoenix, Arizona. (Respondents' Exh. A,

27 Tr. 8/13/02 at 73-74, 122; Exh. B, Tr. 8/14/02 at 6)  While Latisha was inside an apartment,

28 Petitioner, who Donald knew "from the neighborhood," and another person started a fight

1   with Donald.  (Respondents' Exh. B, Tr. 8/14/02 at 5-7)  Petitioner struck Donald in the eye
2   and the back of the head.  Donald backed away from Petitioner and the other assailant.  (*Id.*
3   at 7-8)  When Latisha came outside, she saw Donald "backing up" from Petitioner and
4   another person.  (Respondents' Exh. A, Tr. 8/13/02 at 121, 123)  Latisha saw Petitioner hit
5   Donald in the face and saw Petitioner "pull a gun out" and "point it at the back of Donald's
6   head."  (Respondents' Exh. A, Tr. 8/13/02 at 123-24)  After Donald retreated, he and Latisha
7   walked to his grandmother's house nearby.  (Respondents' Exh. A Tr. 8/13/02 at 124; Exh.
8   B, Tr. 8/14/02 at 8)

9       Several weeks later, on the evening of October 20, 2001, Latisha and Donald's sister,
10  Stacy, were driving Donald's car when it got a flat tire.  (Respondents' Exh. B, Tr. 8/14/02
11  at 8-9)  Donald's father, Donald Hines, Sr., and Donald's uncle, Darrell, drove Donald to his
12  car.  Donald called "roadside assistance," and later rode in the tow truck which towed the car
13  to his grandmother's house.  (Respondents' Exh. B, Tr. 8/14/02 at 9, 28-29; Exh. A, Tr.
14  8/13/02 at 73, 75, 98-99)  On the way to his grandmother's house, Donald noticed a party at
15  the Roeser Apartments.  (Respondents' Exh. B, Tr. 8/14/02 at 10)  Donald called a friend
16  who picked up Donald, Latisha, and Stacy and drove them to Roeser Apartments.
17  (Respondents' Exh. B Tr. 8/14/02 at 9-10; Exh. A, Tr. 8/13/02 at 125-26; Exh. C, Tr.
18  8/15/02 at 118)

19      Upon arriving at the Roeser Apartments, Donald stood near the driveway of the
20  complex talking to several people.  Latisha and Stacy stood a few feet behind Donald, in
21  between two cars, talking to each other.  (Respondents' Exh. A, Tr. 8/13/02 at 127-28; Exh.
22  B, Tr. 8/14/02 at 12-17)  A few minutes later, Latisha saw Petitioner approach from her left
23  and walk in front of her holding a handgun in his right hand, partially hidden by his shirt.
24  (Respondents' Exh. A, Tr. 8/13/02 at 128-29, 156; Exh. C, Tr. 8/15/03 at 110-11, 113)
25  Latisha saw Petitioner approach Donald from behind and "tap[] him on the shoulder."
26  (Respondents' Exh. A, Tr. 8/13/02 at 129-30; Exh. C, Tr. 8/15/02 at 113-14)

27      After feeling a tap on his shoulder and hearing Petitioner's voice, Donald looked over
28  his shoulder and saw Petitioner's face.  (Respondents' Exh. A, Tr. 8/13/02 at 130; Exh. B,

1   Tr. 8/14/02 at 17-18; Exh. C, Tr. 8/15/02 at 114)  Petitioner immediately began shooting

2   Donald.  (Respondents' Exh. B, Tr. 8/14/02 at 18, 36; Exh. A, Tr. 8/13/02 at 131)  Donald

3   tried to get away, but was shot in the leg and fell to the ground face first.  (Respondents'

4   Exh. A, Tr. 8/13/02 at 131; Exh. B, Tr. 8/14/02 at 18-19)  Donald turned his head and saw

5   Petitioner walking towards him pointing a gun towards Donald's head.  (Respondents' Exh.

6   B, Tr. 8/14/02 at 20)  Donald "turned" or "jerk[ed]" his head to the right as Petitioner aimed

7   the gun at this head and fired another shot.  (Respondents' Exh. B, Tr. 8/14/02 at 21; Exh. A,

8   Tr. 8/13/02 at 132-22)  After Petitioner fired a shot at Donald's head, Donald turned and saw

9   Petitioner running towards 18th Street.  Donald tried to crawl but couldn't move his leg.

10  (Respondents' Exh. B, Tr. 8/14/02 at 21-24)  Latisha saw Petitioner aim and shoot at

11  Donald's head. (Respondents' Exh. A, Tr. 8/13/02 at 132-33)  Petitioner then ran from the

12  scene.  (Respondents' Exh. A, Tr. 8/13/02 at 134; Exh. B, Tr. 8/14/02 at 21)

13          During this same time, Donald's father and uncle Darrell were at the Roeser

14  Apartments where Darrell was visiting his daughter.  (Respondents' Exh. A, Tr. 8/13/02 at

15  75)  Donald, Sr. parked west of the complex, facing east toward 18th Street.  He waited in his

16  car while Darrell went inside.  While waiting, he observed a young man approach another

17  man and shoot him in the back.  (Respondents' Exh. A, Tr. 8/13/02 at 75-80)  He saw the

18  victim fall to the ground and then observed the shooter shoot the victim "five or six more

19  times."  (Respondents' Exh. A, Tr. 8/13/02 at 78-80)  Donald, Sr. saw the shooter run past

20  his car about 20 to 50 feet away from him.  (Respondents' Exh. A, Tr. 8/13/02 at 79-82)

21  Donald, Sr. recognized Petitioner, the shooter, who he knew as "Crimson," (Respondents'

22  Exh. A, Tr. 8/13/02 at 82-83, 112-113)  Donald, Sr., however, did not immediately realize

23  the victim was his son.  Donald, Sr. and Darrell returned to the car and started to leave.

24  (Respondents' Exh. A, Tr. 8/13/02 at 78, 83)  While driving away, Donald Sr. realized that

25  the victim was his son and went to help him.  (Respondents' Exh. A, Tr. 8/13/02 at 83-84,

26  94)  Donald Sr. picked up his son and then he and Darrell drove him to County Hospital.

27  (Respondents' Exh. A, Tr. 8/13/02 at 85, 110)

28

Donald suffered two gunshot wounds to the back, two to the left side of his chest, one to the arm, and one to the leg. (Respondents' Exh. B, Tr. 8/14/02 at 22-23, 40-44) Donald also sustained a collapsed lung and a fractured femur. (Respondents' Exh. B, Tr. 8/14/02 at 24) He had surgery to insert a metal rod in his leg and spent two weeks in the hospital. (*Id.*)

Petitioner testified at trial. He acknowledged having a brief argument with Donald a few weeks before the shooting. (Respondents' Exh. C, Tr. 8/15/02 at 88) Petitioner testified that he was at the Roeser Apartments on the evening of October 20, 2001 visiting the mother of one of his children who "stays in that area." (Respondents' Exh. C at 85, 95) Petitioner first saw Donald when he drove in by the "tow truck." (Respondents' Exh. C at 86) Petitioner testified that he later saw Donald "standing in the middle of the street," and stated that they exchanged "acknowledgments." (Respondents' Exh. C at 87-88) Petitioner stated that, at the time of the shooting, "a group of people" were "circling" him while he "was talking to a female." (Respondents' Exh. C at 88) Petitioner described the incident as follows:

> I was at the building between 2 and 3. I was — my back was towards 18th. And as I am talking to this female, I heard shots. Shots went off like, boom, boom, boom, boom. I was not counting, you know what I'm saying, because shots go off all day, no difference from a prior day. We stop, drop, and roll. That is immediate. We stopped, dropped, and I rolled. That's what I'm saying.
>
> At the same time, I look up and I see this Suburban. Make sure the Suburban goes by before I jump up. As he goes by, I jump up, take off running towards the gate part. Stop and see everybody move. I am trying to figure out what is going on. See everybody moving back and forth. Then I made my way to my car.

(Respondents' Exh. C at 88-89) Petitioner testified that he drove away in his blue Monte Carlo and did not know that Donald had been shot until Petitioner was arrested on January 8, 2002. (*Id.* at 90-91, 94) Petitioner claimed he neither owned nor possessed a gun on October 20, 2001. (*Id.* at 90, 103) Petitioner admitted an October 1997 felony conviction. (*Id.* at 91)

///

///

**B.  Charges and Trial**

Based on the foregoing incident, the State of Arizona charged Petitioner with attempted second degree murder.

Following a jury trial,[1] on August 16, 2002, Petitioner was convicted of attempted second degree murder, a dangerous offense.  (Respondents' Exh. E, Tr. 8/16/02 at 3-4) Before sentencing, on October 21, 2002, Petitioner filed a *pro se* motion for change of counsel.  (Respondents' Exh. H)  Following a hearing, on November 8, 2002, the court denied the motion.  (Respondents' Exh. F, Tr. 11/8/02 at 5)  The court noted that counsel had submitted evidence regarding treatment and medication Petitioner was receiving while in jail and, based "partly" on that information, ordered a presentence mental health evaluation of Petitioner pursuant to Ariz.R.Crim.P. 26.5.  (Respondents' Exh. F at 3, 4-6) The court appointed psychologist Dr. Robert Block to evaluate Petitioner's competency to proceed with sentencing. (*Id.* at 6)

Dr. Block examined Petitioner and filed a report on December 22, 2002 opining that Petitioner might not be competent, but that "[t]he possibility exists of a certain amount of malingering."  (Respondents' Exh. J at 2-3)  On January 24, 2003, the court ordered Dr. Block to conduct a follow-up examination and submit a supplemental report addressing Petitioner's ability to communicate with counsel and to participate in sentencing "in a meaningful way."  (Respondents' Exh. K at 2)  Dr. Block submitted an addendum to his original report opining that Petitioner was not able to communicate effectively with counsel or meaningfully participate in sentencing preparation.  (Respondents' Exh. L)  The court subsequently ordered a comprehensive mental health evaluation and transferred the case to the "Rule 11 Commissioner's Court for all further proceedings relating to Defendant's competency as indicated."  (Respondents' Exh. M)

---

[1]  The Honorable Arthur Anderson presided. He is no relation to the undersigned Magistrate Judge.

Drs. Anne Harris and Kevin Hoffert examined Petitioner and both recommended that, although he was likely "malingering," Petitioner be sent to the Arizona State Hospital for further examination and, if appropriate, treatment. (Respondents' Exh. N at 2, 5, Exh. O at 2, 4) The parties stipulated to submit the issue of Petitioner's competency to the court based on the reports of Drs. Harris and Hoffert. (Respondents' Exh. P) Based on those reports, on June 12, 2003, Commissioner Benjamin Vatz found Petitioner incompetent to be sentenced and committed him to Arizona State Hospital for evaluation and treatment. (Respondents' Exh. Q at 2)

Thereafter, in an October 24, 2003 report, Dr. Edward Jasinski opined that Petitioner was "malingering" symptoms of psychoses and cognitive defects "to avoid dealing with his current legal situation." (Respondents' Exh. R at 3-5) Dr. Jasinski explained that Petitioner "attempted to present throughout his hospitalization as having little or no understanding of legal issues" and cognitive deficits. (Respondents' Exh. R at 4) However, Petitioner was observed displaying "good cognitive abilities" when interacting in "group activities," such a playing chess, when interacting with visitors, and when speaking on the phone. (Respondents' Exh. R at 4) Dr. Jasinski concluded that Petitioner was competent to assist counsel "should he choose" to do so. (Respondents' Exh. R at 5)

The parties stipulated to submit the issue of competency based upon Dr. Jasinski's report. (Respondents' Exh. S) Commissioner Vatz found that Petitioner was "malingering symptoms of psychoses and cognitive deficits," and found him competent to understand the proceedings and assist counsel with his defense. Commissioner Vatz transferred the case back to the trial court. (Respondents' Exh. T)

On April 30, 2004, the trial court sentenced Petitioner to a slightly aggravated term of 18 years' imprisonment. (Respondents' Exh. G, Tr. 4/30/04 at 39)

**C. Direct Appeal**

Petitioner appealed to the Arizona Court of Appeals, claiming that the imposition of an aggravated sentence, absent jury findings of aggravating factors, violated his Sixth Amendment right to a jury trial. (Respondents' Exh. V at 7-9) On October 11, 2005, the

1  Court of Appeals rejected this claim and affirmed Petitioner's sentence. (Respondents' Exh.
2  W)

3      **D. Post-Conviction Proceedings**

4        On December 28, 2005, Petitioner filed a *pro se* notice of post-conviction relief.
5  (Respondents' Exh. X)  Petitioner's counsel subsequently filed a petition for post-conviction
6  relief, claiming that Petitioner was "incompetent" to stand trial, and that trial counsel was
7  ineffective for failing to request a competency hearing before trial.  (Respondents' Exh. Y)
8  On July 31, 2006, the trial court denied relief finding that Petitioner failed to allege
9  colorable claims based upon "Defendant's participation in trial, his subsequent ability to
10  recall trial events and the post trial finding of malingering."  (Respondents' Exh. Z at 2)  The
11  court's conclusion that Petitioner was able to recall trial events was based on a March 6,
12  2003 letter Petitioner sent to the trial court two weeks after he was non-responsive to Dr.
13  Hoffert during his Rule 26.5 examination.  (Respondents' Exhs. CC, Z at 2)  In the letter,
14  Petitioner reviewed trial testimony and cited to personal background issues. (*Id.*)

15        Petitioner sought review in the Arizona Court of Appeals which was denied on July
16  12, 2007.  (Respondents' Exhs. AA, BB)

17      **E. Federal Petition for Writ of Habeas Corpus**

18        On January 11, 2008, Petitioner filed the instant petition for writ of habeas corpus
19  raising the following claims:

20      Constitution[al] rights of D[ue] Process because the state took [him] throw (sic)
    Rule 11 after [his] trial.
21

22      Fact One: I had a nervous brake (sic) down dureing (sic) trail (sic) after seeing 3
    doctors I was sent to state hospital.  Doctors said I suffered from depression
    and post [traumatic] stress and [should not have] went throw trail. (sic)
23

24      Fact Two: My fast and speedy trail (sic) was violated after state took same
    charges back to grand jury to get higher charge.

25      Fact 3: No one on jury was African American (sic).

26  (docket # 1 at 2)  Respondents filed an Answer, arguing that Petitioner's speedy trial and
27  jury-related claims are procedurally barred and that his competency claim lacks merit.

28

(docket # 9)  With leave of Court, Petitioner subsequently supplemented his Petition to include the following claims:

> 1. Appellate counsel was ineffective because he had a conflict of interest;
>
> 2.  Petitioner's aggravated sentence violates *Blakely*;
>
> 3. Trial counsel was ineffective in failing to file a Rule 11 motion before trial;
>
> 4. Trial counsel was ineffective in failing to obtain expert testimony regarding the weapon that was used in the shooting;
>
> 5.  Trial counsel was ineffective in failing to impeach the victim and eyewitnesses; and
>
> 6. The trial court erred in giving a flight instruction.

(*see* dockets ## 10, 11)  Thereafter, Respondents filed a Supplemental Answer.  (docket # 12)  Petitioner did not file a reply to the Supplemental Answer despite the Court's order advising him that he could do so.  (docket # 11)  The Court will now consider Petitioner's claims after setting forth the relevant law regarding exhaustion and the standard of review governing § 2254 petitions.

## II. Exhaustion and Procedural Bar

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him.  28 U.S.C. § 2254(b).  The exhaustion inquiry focuses on the availability of state remedies at the time the petition for writ of habeas corpus is filed in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  The prisoner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).  In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. 845. "One complete round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State."  *Id.*

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

1    court in a procedurally appropriate manner.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989);

2    *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the

3    necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate

4    state court . . . thereby alerting the court to the federal nature of the claim.").  In Arizona,

5    unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if

6    the petitioner has presented his federal claim to the Arizona Court of Appeals either on

7    direct appeal or in a petition for post-conviction relief.  *Crowell v. Knowles,* 483 F.Supp.2d

8    925 (D.Ariz. 2007)(discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

9         In addition to presenting his claims to the proper court, a state prisoner must fairly

10   present his claims to that court to satisfy the exhaustion requirement.  Fair presentation

11   requires a petitioner to describe both the operative facts and the federal legal theory to the

12   state courts.  *Reese*, 541 U.S. at 28.  It is not enough that all of the facts necessary to support

13   the federal claim were before the state court or that a "somewhat similar" state law claim

14   was raised.  *Reese*, 541 U.S. at 28 (stating that a reference to ineffective assistance of

15   counsel does not alert the court to federal nature of the claim).  Rather, the habeas petitioner

16   must cite in state court to the specific constitutional guarantee upon which he bases his claim

17   in federal court.  *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001).  Similarly, general

18   appeals to broad constitutional principles, such as due process, equal protection, and the

19   right to a fair trial, are insufficient to establish fair presentation of a federal constitutional

20   claim.  *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*,

21   247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000)

22   (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such

23   as a naked reference to "due process," or to a "constitutional error" or a "fair trial").

24   Likewise, a mere reference to the "Constitution of the United States" does not preserve a

25   federal claim.  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  Even if the basis of a

26   federal claim is "self-evident" or if the claim would be decided "on the same considerations"

27   under state or federal law, the petitioner must make the federal nature of the claim "explicit

28   either by citing federal law or the decision of the federal courts . . . ."  *Lyons*, 232 F.3d at

1    668.  A state prisoner does not fairly present a claim to the state court if the court must read

2    beyond the pleadings filed in that court to discover the federal claim.  *Baldwin*, 541 U.S. at

3    27.

4              In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

5    satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

6    through the proper vehicle, and (3) by providing the proper factual and legal basis for the

7    claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

8              ***Procedural Default***

9              A habeas petitioner's claims may be precluded from federal review in either of two

10    ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

11    in state court but found by that court to be defaulted on state procedural grounds such as

12    waiver or preclusion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

13    at 729-30.  Thus, a state prisoner may be barred from raising federal claims that he did not

14    preserve in state court by making a contemporaneous objection at trial, on direct appeal, or

15    when seeking post-conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)

16    (stating that failure to raise contemporaneous objection to alleged violation of federal rights

17    during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d

18    1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

19    Appeals held that habeas petitioner had waived claims by failing to raise them on direct

20    appeal or in first petition for post-conviction relief.)  If the state court also addressed the

21    merits of the underlying federal claim, the "alternative" ruling does not vitiate the

22    independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer*

23    *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

24    of counsel claims "barred under state law," but also discussed and rejected the claims on the

25    merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

26    and the claims were procedurally defaulted and barred from federal review).  A higher

27    court's subsequent summary denial of review affirms the lower court's application of a

28    procedural bar.  *Nunnemaker*, 501 U.S. at 803.

The second procedural default scenario arises when a state prisoner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

### *Excusing Procedural Default*

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Cook v. Schriro*, 516 F.3d 802 (9th Cir. 2008); *Dretke v. Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id*. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id*. Ordinarily, the ineffective assistance of counsel in collateral proceedings does not constitute cause because "the right to counsel does not extend to state collateral proceedings or federal

1    habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

2    Prejudice is actual harm resulting from the constitutional violation or error.  *Magby v.*

3    *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner

4    bears the burden of demonstrating that the alleged constitutional violation "worked to his

5    actual and substantial disadvantage, infecting his entire trial with error of constitutional

6    dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d

7    1119, 1123 (9th Cir. 1996).  Where petitioner fails to establish cause, the court need not

8    reach the prejudice prong.

9         A federal court may also review the merits of a procedurally defaulted habeas claim if

10   the petitioner demonstrates that failure to consider the merits of his claim will result in a

11   "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

12   "fundamental miscarriage of justice" occurs when a constitutional violation has probably

13   resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

14   miscarriage of justice" standard, petitioner must establish that it is more likely than not that

15   no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

16   evidence.  *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).  Even if petitioner asserts a

17   claim of actual innocence to excuse his procedural default of a federal claim, federal habeas

18   relief may not be granted absent a finding of an independent constitutional violation

19   occurring in the state criminal proceedings.  *Dretke*, 541 U.S. at 393-94.

20   **III.  Standard of Review**

21        In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

22   ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

23   applications in order to prevent federal habeas 'retrials' and to ensure that state-court

24   convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.

25   685, 693 (2002).

26        Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in

27   state court is not entitled to relief in federal court unless he meets the requirements of 28

28   U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not

- 12 -

1   entitled to relief unless he demonstrates that the state court's adjudication of his claims

2   "resulted in a decision that was contrary to, or involved an unreasonable application of,

3   clearly established Federal law, as determined by the Supreme Court of the United States" or

4   "resulted in a decision that was based on an unreasonable determination of the facts in light

5   of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2); *Carey*

6   *v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 653 (2006); *Lockyer v. Andrade*, 538 U.S. 63,

7   75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether

8   a state court ruling was "contrary to" or involved an "unreasonable application" of federal

9   law, courts must look exclusively to the holdings of the Supreme Court which existed at the

10  time of the state court's decision.  *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003);

11  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Accordingly, the Ninth Circuit has

12  acknowledged that it cannot reverse a state court decision merely because that decision

13  conflicts with Ninth Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378

14  F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

15          Even if the state court neither explained its ruling nor cited United States Supreme

16  Court authority, the reviewing federal court must nevertheless examine Supreme Court

17  precedent to determine whether the state court reasonably applied federal law.  *Early v.*

18  *Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has expressly held that

19  citation to federal law is not required and that compliance with the habeas statute "does not

20  even require awareness of our cases, so long as neither the reasoning nor the result of the

21  state-court decision contradicts them." *Id.*

22          A state court's decision is "contrary to" federal law if it applies a rule of law "that

23  contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

24  facts that are materially indistinguishable from a decision of [the Supreme Court] and

25  nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

26  *Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

27  (2000).

28

1    A state court decision involves an "unreasonable application of" federal law if the

2    court identifies the correct legal rule, but unreasonably applies the rule to the facts of a

3    particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An

4    incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*,

5    541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the

6    state court's decision is objectively unreasonable.") "It is not enough that a federal habeas

7    court, in its independent review of the legal question," is left with the "firm conviction" that

8    the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.  Rather, the petitioner

9    must establish that the state court decision is "objectively unreasonable." *Middleton v.*

10   *McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

11    Where a state court decision is deemed to be "contrary to" or an "unreasonable

12   application of" clearly established federal law, the reviewing court must next determine

13   whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th

14   Cir. 2002).  Habeas relief is warranted only if the constitutional error at issue had a

15   "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

16   *Abrahamson*, 507 U.S. 619, 631 (1993).  In § 2254 proceedings, the federal court must

17   assess the prejudicial impact of a constitutional error in a state-court criminal proceeding

18   under *Brecht's* more forgiving "substantial and injurious effect" standard, whether or not the

19   state appellate court recognized the error and reviewed it for harmlessness under the

20   "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S.

21   18, 24 (1967)." *Fry v. Pliler*, ___ U.S.___, 127 S.Ct. 2321, 2328 (2007).  The *Brecht*

22   harmless error analysis also applies to habeas review of a sentencing error.  The test is

23   whether such error had a "substantial and injurious effect" on the sentence. *Calderon v.*

24   *Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas relief to be granted based on

25   constitutional error in capital penalty phase, error must have had substantial and injurious

26   effect on the jury's verdict in the penalty phase.); *Hernandez v. LaMarque*, 2006 WL

27   2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence of three of petitioner's

28   prior convictions was insufficient, petitioner was not prejudiced by the court's consideration

1   of those convictions because the trial court found four other prior convictions which would

2   have supported petitioner's sentence.)  The Court will review Petitioner's claims which are

3   properly before the Court under the applicable standard of review.

4   **IV. Analysis of Petitioner's Claims**

5          Below, the Court will determine whether Petitioner's claims are procedurally barred

6   from federal habeas review and, if appropriate, consider the merits of the claims that are

7   properly before the Court.

8          **A. Speedy Trial and Jury-Related Claims**

9          Liberally construing the Petition (docket # 1), Petitioner asserts a speedy trial

10  violation and argues that he was denied his right to an impartial jury due to the lack of

11  African-Americans on the jury. (docket # 1 at 2)

12         Respondents assert that these claims are procedurally defaulted and barred from

13  federal review because Petitioner did not present such claims to the state courts either during

14  trial, direct appeal, or post-conviction review.  The Court agrees.  Petitioner never raised a

15  speedy trial claim or a jury-related claim to the state courts.  Any attempt to return to state

16  court to present these claims would be futile because the claims would be procedurally

17  barred pursuant to Arizona law.  First, Petitioner is time-barred under Arizona law from

18  raising his claims in a successive petition for post-conviction relief  because the time for

19  filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4

20  (a petition for post-conviction relief must be filed "within ninety days after the entry of

21  judgment and sentence or within thirty days after the issuance of the order and mandate in

22  the direct appeal, whichever is later.")  Although Rule 32.4 does not bar dilatory claims if

23  they fall within the category of claims specified in Ariz.R.Crim.P 32.1(d) through (h),

24  Petitioner has not asserted that any of these exceptions apply to him.  Moreover, a state post-

25  conviction action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th

26  Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing

27  untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition

28  for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

1    Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

2   defendant is precluded from raising claims that could have been raised on direct appeal or in

3   any previous collateral proceeding. *See also Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

4   1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

5   number of issues and waived other issues that he could have then raised, but did not); *State*

6   *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded

7   from seeking post-conviction relief on grounds that were adjudicated, or could have been

8   raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State*

9   *v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his

10  sentence had been improperly enhanced by prior conviction was precluded by defendant's

11  failure to raise issue on appeal). The aforementioned claims could have been raised either on

12  direct appeal or in Petitioner's post-conviction relief proceeding. Consequently, the state

13  court would find these claims procedurally barred.  In section C, *infra*, the Court will

14  address whether Petitioner has established a basis for overcoming the procedural bar.

15          **B.  Supplemental Claims asserted in Petitioner's Reply**

16          Petitioner asserts the following claims in his Reply: (1) appellate counsel was

17  ineffective because he had a conflict of interest; (2) Petitioner's aggravated sentence violates

18  *Blakely*; (3) trial counsel was ineffective in failing to file a Rule 11 motion before trial; (4)

19  trial counsel was ineffective in failing to obtain expert testimony regarding the weapon that

20  was used in the shooting; (5) trial counsel was ineffective in failing to impeach the victim

21  and eyewitnesses; and (6) the trial court erred in giving a flight instruction. (docket # 10)

22          Respondents assert that Claims 1, 4, 5, and 6 are procedurally defaulted because

23  Petitioner did not present those claims on direct appeal or in his petition for review to the

24  Arizona Court of Appeals from the trial court's denial of post-conviction relief.  (docket # 9,

25  Respondents' Exhs. V, W, Y, and AA)  The Court agrees.

26          The record reflects that Petitioner never presented these claims to the Arizona Court

27  of Appeals.  Any attempt to return to state court to present Claims 1, 4, 5 and 6 would be

28  futile because the claims would be procedurally barred pursuant to Arizona law.  Petitioner

1   is time-barred under Arizona law from raising his claims in a successive petition for post-

2   conviction relief  because the time for filing a notice of post-conviction relief has long

3   expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed

4   "within ninety days after the entry of judgment and sentence or within thirty days after the

5   issuance of the order and mandate in the direct appeal, whichever is later.")  Although Rule

6   32.4 does not bar dilatory claims if they fall within the category of claims specified in

7   Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions

8   apply to him.  Moreover, a state post-conviction action is futile where it is time-barred.

9   *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410

10  (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for

11  dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under

12  Rule 32.2(a)).

13          Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

14  defendant is precluded from raising claims that could have been raised on direct appeal or in

15  any previous collateral proceeding. *See also Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

16  1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

17  number of issues and waived other issues that he could have then raised, but did not); *State*

18  *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded

19  from seeking post-conviction relief on grounds that were adjudicated, or could have been

20  raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State*

21  *v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his

22  sentence had been improperly enhanced by prior conviction was precluded by defendant's

23  failure to raise issue on appeal). The aforementioned claims could have been raised either on

24  direct appeal or in Petitioner's post-conviction relief proceeding. Consequently, the state

25  court would find these claims procedurally barred.  In section C, *infra*, the Court will

26  address whether Petitioner has established a basis for overcoming the procedural bar.

27  ///

28  ///

**C.  Excusing Procedural Bar**

Because Petitioner's speedy trial violation and jury-related claims asserted in his Petition (docket # 1) and claims 1, 4, 5, and 6 asserted in his Reply (docket # 10) are procedurally defaulted, habeas review of those claims is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke*, 541 U.S. at 393-94.

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.*  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.*  Prejudice is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner does not assert any cause to excuse his failure to properly exhaust his state remedies.  As a general matter, Petitioner's *pro se* status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986).  "[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (9th Cir. 1999)). Petitioner's ignorance of the law and indigent status do not distinguish him from the great majority of inmates pursuing habeas corpus relief.  Such circumstances are not extraordinary and do not justify tolling the limitations period.  "If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these same problems in common." *Bolanos v. Kirkland*, No. 1:06-cv-00808-AWI-TAG HC, 2008 WL 928252, * 4 (E.D.Cal. April 4, 2008).  *See also*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (affirming denial of equitable

1    tolling because neither the district court's failure to advise the petitioner of the right to

2    amend his petition to include unexhausted claims nor petitioner's inability to correctly

3    calculate the limitations period were extraordinary circumstances warranting equitable

4    tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (holding that delays caused

5    by prison inmate law clerk and law library closures do not justify equitable tolling).

6    Likewise, Petitioner's lack of legal assistance is not an extraordinary circumstance. *See,*

7    *Ballesteros v. Schriro*, CV-06-675-EHC (MEA), 2007 WL 666927 (D.Ariz., February 26,

8    2007) (noting that a petitioner's *pro se* status, ignorance of the law, lack of representation

9    during the applicable filing period, and temporary incapacity do not constitute extraordinary

10   circumstances) (citing *Fisher v. Johnson*, 174 F.3d 170, 714-15 (5th Cir. 1999)); *Shoemate v.*

11   *Norris*, 390 F.3d 595, 598 (8th Cir. 2004)(holding that petitioner's misunderstanding of

12   state's "rules, statutes, and the time period set forth therein do not justify equitable tolling.").

13        A federal court may review the merits of a procedurally defaulted habeas claim if the

14   petitioner demonstrates that failure to consider the merits of his claim will result in a

15   "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

16   "fundamental miscarriage of justice" occurs when a constitutional violation has probably

17   resulted in the conviction of one who is actually innocent.  *Id.*  Petitioner does not argue that

18   failure to consider his claims will result in a fundamental miscarriage of justice.

19        In summary, federal review of Petitioner's speedy trial and jury claims (docket # 1)

20   and Claims 1, 4, 5 and 6 (docket # 10) is procedurally barred.  Petitioner has not established

21   any basis to overcome the procedural bar, therefore, the Court will not reach the merits of

22   those claims.

23        **D.  Competency to Stand Trial**

24        Liberally construing the Petition, Petitioner also asserts a due process violation based

25   on the trial court's failure to examine Petitioner's competency to stand trial pursuant to

26   Ariz.R.Crim.P. 11.  (docket # 1 at 2)  Petitioner presented this claim on post-conviction

27   review.  (Respondents' Exhs. Y, AA)  As discussed below, Petitioner fails to establish that

28   the state court's resolution of this claims rests on an "unreasonable determination of the

1  facts" or is "contrary to" or an "unreasonable application of" federal law.  28 U.S.C. §

2  2254(d)(1).

3       The Fourteenth Amendment's Due Process Clause "prohibits the criminal prosecution

4  of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439

5  (1992).  The controlling Supreme Court law regarding competency is *Dusky v. United*

6  *States*, 362 U.S. 402 (1960) where the Court held that a defendant is competent to stand trial

7  if he has "sufficient present ability to consult with his lawyer with a reasonable degree of

8  rational understanding - and whether he has a rational as well as factual understanding of the

9  proceedings against him." *Dusky*, 362 U.S. at 402 (internal citations omitted). The test for

10  determining whether the trial court violated Due Process by failing to *sua sponte* inquire into

11  defendant's competency to stand trial, is whether the objective facts known to the trial court

12  at the time created a "bona fide doubt" as to defendant's competency to stand trial.  *Pate v.*

13  *Robinson*, 383 U.S. 375, 385 (1966).  To give rise to a "bona fide doubt," there must be

14  "substantial evidence of incompetence." *Moran v. Godinez*, 57 F.3d 690, 695 (9th Cir.

15  1995), *superseded on other grounds, Van Tran v. Lindsey*, 212 F.3d 1143 (9th Cir. 2000); *see*

16  *also Harding v. Lewis*, 834 F.2d 853, 856 (9th Cir. 1987).  In determining whether the trial

17  court should have *sua sponte* ordered a competency hearing, a federal court may consider

18  only the evidence that was before the trial judge at that time.  *Williams v. Woodford*, 306

19  F.3d 665, 702 (9th Cir. 2002); *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993).

20       The issue is not whether Petitioner was in fact incompetent to stand trial, but whether

21  the presiding judge had evidence before him which should reasonably have caused him to

22  doubt petitioner's competence.  If so, the failure to hold a competency hearing violated due

23  process. *Drope v. Missouri*, 420 U.S. 162, 174-175 (1975).  "Although no particular facts

24  signal incompetence, suggestive evidence includes a defendant's demeanor before the trial

25  court, previous irrational behavior, and available medications." *Moran*, 57 F.3d at 695.  The

26  Ninth Circuit has stated that the "most telling evidence" that a defendant was competent to

27  stand trial is the fact that his counsel, "who would have every incentive to point out that his

28  client was incapable of assisting with his defense," never raised the claim. *Boyde v. Brown*,

1   404 F.3d 1159, 1167 (9th Cir. 2005), *amended*, 421 F.3d 1154 (9th Cir. 2005).  The fact that

2   trial counsel did not raise the issue of competency at trial is "powerful evidence" that

3   defendant was competent.  *Jermyn v. Horn*, 266 F.3d 257, 297-98 (3rd Cir. 2001); *Beck v.*

4   *Angelone*, 261 F.3d 377, 389 (4th Cir. 2001).

5         Here, Petitioner claims that his right to due process was violated because the trial

6   court did not order a Rule 11 examination of his competency before trial.  Defense counsel

7   did not request a Rule 11 examination.  Petitioner does not offer any evidence indicating that

8   at the time of his trial there was any information before the trial judge that would have

9   created a "bona fide doubt" about Petitioner's competency to stand trial.  *Pate*, 383 U.S. at

10  385; *Drope*, 420 U.S. at 180.  To the contrary, the record contains evidence which supports a

11  finding that Petitioner was competent to stand trial and to participate in his defense.  For

12  instance, on the third day of trial, defense counsel conveyed that Petitioner was involved in

13  preparing his defense and helped locate a potential witness several days before trial.

14  Counsel engaged in the following exchange with the trial court:

15              Judge, the facts — you know, I spoke to my client last week and we
            were talking about the various witnesses who [were] going to testify, and
16          reviewing the police summaries.  I advised him if he had any witnesses, let
            me know.  I know that I had asked him previously.  And he didn't — couldn't
17          remember—didn't know of anybody that was there that evening.  But Jamal
            Moore is a gentleman that he ran into at the Madison Street jail because Mr.
18          Moore is currently in custody currently on unrelated charges.  And my client
            told me, know, there is a guy over here that says X, Y, and Z.  I said what's his
19          name.  He says I don't know his full name; let me talk to him and I will tell you.

20              That was last Thursday or Friday.  When I saw him Monday, he gave me
            the booking number.  I immediately disclosed that to Ms. Kay.
21
22  (Respondents' Exh. B, Tr. 8/14/02 at 159-60)

23        Petitioner's participation on the fourth day of trial also weighs against a finding that

24  there could have been a "bona fide doubt" regarding Petitioner's competency to stand trial.

25  Specifically, Petitioner testified in his defense and, as set forth above, his testimony was

26  coherent.  (Respondents' Exh. C, Tr. 8/15/02 at 84-92)  Petitioner was active during cross-

27  examination and challenged the prosecutor.  (*Id.* at 92-100)  A defendant's ability to testify

28

1  cogently at trial without any indicia that he "was not completely aware of what was going

2  on" is strong evidence of competency.  *Boyde*, 404 F.3d at 1167.

3        The only suggestion that Petitioner may have lacked competency surfaced several

4  months *after* trial in the form of a letter Petitioner sent to the trial court along with his

5  motion for change of counsel.  (Respondents' Exh. F at 5-7)  Based on that information, the

6  court ordered a presentence mental health examination to determine Petitioner's competency

7  to be sentenced.  (Respondents' Exh. F)  Three doctors examined Petitioner and suspected

8  that he was "malingering."  However, the doctors recommended sending Petitioner to

9  Arizona State Hospital for a more comprehensive examination and, if necessary, treatment.

10  (Respondents' Exh. J at 2-3, Exh. N at 2, 5; Exh. O at 2, 4)  Dr. Jasinski from Arizona State

11  Hospital determined that Petitioner was "malingering" symptoms of cognitive deficiencies

12  and psychoses to "avoid dealing with his current legal situation," and was competent to

13  assist counsel.  (Respondents' Exh. R at 3-5)  Based on Dr. Jasinski's report, Commissioner

14  Vatz found that Petitioner was "malingering symptoms of psychoses and cognitive defects,"

15  and that he was competent to be sentenced.  (Respondents' Exh. T)

16        On post-conviction review, Petitioner argued that he was "incompetent" to stand trial,

17  and that trial counsel was ineffective for failing to request a competency hearing before trial.

18  (Respondents' Exh. Y)  The trial court denied relief, finding that Petitioner failed to allege

19  colorable claims based upon "Defendant's participation in trial, his subsequent ability to

20  recall trial events and the post trial finding of malingering." (Respondents' Exh. Z at 2)  The

21  court's conclusion that Petitioner was able to recall trial events was based on a March 6,

22  2003 letter Petitioner sent to the trial court two weeks after he had been non-responsive to

23  Dr. Hoffert during his Rule 26.5 examination.  (Respondents' Exhs. CC, Z at 2)  In the

24  letter, Petitioner reviewed trial testimony and cited to personal background issues.  (*Id.*)

25        The factual findings of the trial court are presumed correct and are supported by the

26  state court record.  *See* 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735

27  (1990) (stating that a state court finding that a defendant is competent to stand trial is a

28  finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1));

1    *Sandgathe v. Maas*, 314 F.3d 371, 380 (9th Cir. 2002).  Petitioner bears the burden of

2    rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

3    Petitioner has not offered any evidence to overcome the presumption of correctness.  Upon

4    review of the record, the trial court's rejection of Petitioner's competency claim is neither

5    contrary to, nor an unreasonable application of federal law, accordingly, Petitioner is not

6    entitled to habeas corpus relief based on that claim.  28 U.S.C. § 2254(d).

7             **E.  Claim 2 - *Blakely* Violation**

8             In Claim 2 of his Reply (docket # 10), Petitioner asserts that the imposition of an

9    aggravated sentence violates the Supreme Court's holding in *Blakely v. Washington*, 542

10   U.S. 296 (2004).  Petitioner presented this claim to the Arizona Court of Appeals on direct

11   review.  (Respondents' Exh. V at 7-9)  Therefore, as Respondents concede, this claim was

12   fairly presented and is properly before this Court.

13            Here, the trial court imposed an aggravated sentence of 18 years' imprisonment.  *See*,

14   A.R.S. §§ 13-604(J), 13-1001(c)(1), 13-1104(B) (the presumptive sentence is 15 and 3/4

15   years' imprisonment, and the maximum sentence is 28 years' imprisonment).  The court

16   found no mitigating circumstances and the following aggravated circumstances: "The

17   number of shots that occurred here, the injuries to the victim, and looking at Mr. Haqq's

18   prior history of violence."  (Respondents' Exh. G, Tr. 4/30/04 at 38-39)  On direct appeal,

19   the Arizona Court of Appeals held that the aggravated sentence complied with *Blakely*

20   because the trial court's finding of Petitioner's "prior history of violence" was predicated

21   upon Petitioner's 1997 conviction for aggravated assault involving a gun and his 1993

22   juvenile adjudication for aggravated assault involving a gun.  (Respondents' Exh. W at 4-7)

23   The State court's determination is neither contrary to, nor an unreasonable application of,

24   *Blakely*.  *See* 28 U.S.C. § 2254(d)(1).

25            Petitioner argues that his aggravated sentence violates *Blakely* in which the Supreme

26   Court held any factor which leads to a sentence greater than would be imposed based on the

27   jury's finding of guilt must be found by a jury beyond a reasonable doubt.  (docket # 10)

28   Before *Blakely*, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held

1 "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime

2 beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

3 reasonable doubt." 530 U.S. at 490 (emphasis added).  The Supreme Court specifically

4 carved out an exception for prior convictions.  *Id.*; *United States v. Maria-Gonzalez*, 268

5 F.3d 664, 670 (9th Cir. 2001) (holding prior aggravated felony conviction did not constitute

6 an element of the offense where base sentence for illegally reentering the United States

7 following deportation is enhanced if deportation was subsequent to conviction for

8 aggravated felony); *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir. 2001)

9 (holding the district court could consider defendant's prior conviction in imposing sentence

10 enhancement even though such conduct had not been charged in the indictment, presented to

11 the jury, and proved beyond a reasonable doubt); *United States v. Pacheco-Zepeda*, 234 F.3d

12 411, 415 (9th Cir. 2001) (noting *Apprendi* held all prior convictions are exempt under

13 *Apprendi*'s new rule, therefore, district court properly considered prior convictions in

14 sentencing); *United States v. Arellano-Rivera*, 244 F.3d 1119 (9th Cir. 2001)(same).

15 　　　As previously stated, under *Blakely*, any factors which lead to a sentence greater than

16 that which would be imposed based on the jury's finding of guilt must be found by the jury.

17 542 U.S. at 301.  *Blakely* reaffirmed the exemption for prior convictions and reiterated that

18 they may serve as aggravating factors without further proof.  *United States v. Quintana-*

19 *Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004) (citing *Blakely*, 542 U.S. at 303).  *Blakely*

20 also clarified that the "statutory maximum" sentence is initially the presumptive term and is

21 the "maximum sentence the judge may impose solely *on the basis of the facts reflected in*

22 *the jury verdict or admitted by the defendant*.  In other words, the relevant 'statutory

23 maximum' is not the maximum sentence a judge may impose after finding additional facts,

24 but the maximum he may impose without any additional findings." *Blakely*, 542 U.S. at 303-

25 04 (emphasis in original).  The *Blakely* Court concluded that, before a trial court can impose

26 a sentence above the statutory maximum, a jury must find beyond a reasonable doubt, or

27 defendant must admit, all facts "*legally essential* to punishment."  *Blakely*, 542 U.S. at 313

28 (emphasis added).

1    In this case, the state court's decision that Petitioner's aggravated sentence did not

2    violate the Sixth Amendment was neither an unreasonable application of, nor contrary to,

3    the *Blakely* decision.  The Arizona Supreme Court considered the impact of *Blakely* on

4    Arizona's sentencing scheme in *State v. Martinez II,* 210 Ariz. 578, 583, 115 P.3d 618, 623

5    (Ariz. 2005)(*Martinez II).* In Arizona, the statutory maximum sentence in a case where no

6    *Blakely*-compliant or *Blakely*-exempt aggravating factors are present is the presumptive

7    term.. *Martinez II*, 210 Ariz. at 583, 115 P.3d at 623; *State v. Price*, 217 Ariz. 182, 184-85,

8    171 P.3d 1223, 1225-26 (2007).  However, because an Arizona defendant may receive an

9    aggravated sentence based on only one aggravating factor, A.R.S. § 13-702(B), a single

10   *Blakely*-compliant or *Blakely*-exempt aggravating factor establishes the facts "legally

11   essential" to punishment. Once such a factor is established, the trial court is free to consider

12   additional facts to determine where to sentence a defendant within the aggravated range.

13   *Martinez II,* 210 Ariz. at 584-585, 115 P.3d at 625; Price, 217 Ariz. 182, 185, 171 P.3d at

14   1226 (stating that "[i]f there is one *Apprendi*-compliant aggravating factor, "a defendant is

15   exposed to a sentencing range that extends to the maximum punishment available under

16   section 13-702.")

17   In view of the foregoing, Petitioner's prior conviction for aggravated assault and his

18   prior juvenile conviction for aggravated assault involving a gun exposed Petitioner to the

19   aggravated sentencing range.  Petitioner's prior conviction for aggravated assault is exempt

20   from the rule of *Apprendi*/*Blakely*.  *Blakely*, 42 U.S. at 301(retaining *Apprendi's* exception

21   for prior felony convictions).  The Supreme Court has not resolved whether the "prior

22   conviction" exception applies to juvenile adjudications.  *Boyd v. Newland*, 455 F.3d 897,

23   909-10 (9th Cir. 2006).  Thus, the Arizona Court of Appeals' holding that Petitioner's

24   juvenile adjudication was *Blakely*-exempt was not contrary to, nor an unreasonable

25   application of, Supreme Court precedent.  *Id.* at 910.

26   Applying *Blakely*, courts within the Ninth Circuit have held a federal habeas

27   petitioner's "prior conviction alone" is sufficient to support the imposition of "a sentence

28   anywhere within the statutory range."  *Jones v. Schriro*, No. CV-05-3720-PHX-JAT (DKD),

1    2006 WL 1794765, * 3 (D.Ariz. June 27, 2006).  In *Jones*, the court found no *Blakely*

2    violation where petitioner's aggravated sentence was based, in part, on a prior conviction.

3    *Id.* at * 3 n. 2.  The court also noted "'once a jury finds or a defendant admits a single

4    aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider

5    additional factors relevant to the imposition of a sentence up to the maximum prescribed in

6    that statute.'"  *Id.* at * 2 (quoting *State v. Martinez*, 115 P.2d 618 (2005)).

7         In *Nino v. Flannigan*, No. 2:04cv2298-JWS (CRP), 2007 WL 1412493 (D.Ariz., May

8    14, 2007), the court found petitioner's aggravated sentence comported with *Blakely* because

9    one of the aggravating factors, a prior conviction, was *Blakely*-exempt, and the other

10   aggravating factor was admitted by Petitioner during the plea colloquy.  *Id.* at * 4.   The

11   court explained, under A.R.S. § 13-702, the existence of a single aggravating factor exposes

12   a defendant to an aggravated sentence.

13        Similarly, in this case, Petitioner's prior convictions exposed him to the aggravated

14   term of imprisonment.  The trial court also found other aggravating factors, the injuries to

15   the victims and the number of shots.  (Respondents' Exh. G at 38-39)  However, Petitioner's

16   prior felony convictions alone exposed him to the fully aggravated term.  *Blakely*, 542 U.S.

17   at 303-04. Therefore, Petitioner's aggravated sentence comports with the Sixth Amendment.

18        Based on the foregoing, the Court concludes that the state court's decision that

19   Petitioner's aggravated sentence did not violate the Sixth Amendment is neither contrary to,

20   nor an unreasonable application of *Blakely*.

21        Moreover, even if Petitioner's prior felony conviction and prior juvenile adjudication

22   were not *Blakely*-exempt, any resulting error is harmless.  *See Washington v. Recuenco*, 548

23   U.S. 212 (2006).  On federal habeas corpus review, the applicable harmless error standard is

24   whether the error had a "substantial and injurious effect" upon the sentence.  *Brecht v.*

25   *Abrahamson*, 507 U.S. 616, 623 (1993).

26        In this case, no reasonable juror could fail to find beyond a reasonable doubt either of

27   the two additional aggravating factors which the trial court considered in imposing an

28   aggravated sentence.  Petitioner did not contest the "number of shots" fired.  Rather, he

1  conceded that "multiple shots" were fired.  (Respondents' Exh. G at 30)  The evidence

2  confirmed that Petitioner fired seven shots.  (Respondents' Exh. B, Tr. 8/14/02 at 22, 79-80,

3  99)

4         Additionally, no reasonable juror could fail to find the "injuries to the victim."

5  Petitioner's counsel conceded that, "in looking at the six factors that the State listed, I think

6  probably the one that's probably not redundant is the issue relative to, and the Court's (sic)

7  can consider, the harm to the victim."  (Respondents' Exh. G, Tr. 4/30/04 at 30) The victim

8  suffered significant injuries that were not disputed.  He was shot six times - twice in the

9  chest, twice in the back, once in the arm, and once in the leg.  (Respondents' Exh. B, Tr.

10  8/14/02 at 22-23) One bullet passed through the victim's lung causing it to collapse.

11  (Respondents' Exh. B at 24)  The shot to the victim's leg fractured his femur, requiring that

12  a "metal rod" be implanted in his leg.  (*Id.*)  After being discharged from the hospital, the

13  victim had to be re-admitted for a "diaphragmatic hernia." (*Id.*)  At the sentencing hearing,

14  the victim described his physical injuries:

15         I would just like to comment about the injuries that I have suffered like
       the multiple surgeries I've had to have as a result of this shooting.  I've had
16       to have a diaphragmatic hernia repaired.  My lung's collapsed on me.  I have
       constant shortness of breath.  I have to have another surgery in my leg for
17       them to remove the bolts out of my left knee, and my health just seems like
       it's - it's getting worse, and my leg hasn't gotten too much better.  It constantly
18       buckles on me when I try to stand more than 30 minutes.  It buckles.  I just
       start walking and it's like I'm going to fall.  There's different injuries I've been
19       suffering since this shooting.  It's changed my life dramatically.

20  (Respondents' Exh. E, Tr. 4/30/04 at 32)

21         In view of the foregoing, even if Petitioner's aggravated sentence violated *Blakely*,

22  the error did not have a "substantial and injurious effect" upon the sentence and, therefore,

23  the error was harmless.  *Brecht*, 507 U.S. at 623.

24         **F.  Claim 3 - Ineffective Assistance of Counsel**

25         In Claim 3 of his Reply, Petitioner asserts that trial counsel was ineffective for failing

26  to file a Rule 11 determination of competency at the time of trial or in failing to move for a

27  new trial based upon the preliminary finding of the Rule 11 Commissioner regarding

28  competency for sentencing.  (docket # 10) Petitioner presented this claim to the trial court on

1   post-conviction review (docket # 9, Exh. Y at 7-8) and to the Arizona Court of Appeals on

2   review of the trial court's denial of Petitioner's petition for post-conviction relief.  (*Id.*, Exh.

3   AA at 9-10) The Court already rejected the basis of this claim in relation to Petitioner's

4   claim that he was incompetent to stand trial in Section IV. D, *supra*.  The Court will also

5   specifically address the ineffective assistance of counsel claim.

6          The controlling Supreme Court precedent on claims of ineffective assistance of

7   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

8   must show that counsel's performance was objectively deficient and that counsel's deficient

9   performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

10  1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the

11  wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690. When

12  reviewing counsel's performance, the court engages a strong presumption that counsel

13  rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*,

14  466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be

15  made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

16  counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

17  time."  *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely

18  limited."  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*

19  *grounds*, 525 U.S. 141 (1998). "A convicted defendant making a claim of ineffective

20  assistance must identify the acts or omissions of counsel that are alleged not to have been the

21  result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Acts or omissions

22  that "might be considered sound trial strategy" do not constitute ineffective assistance of

23  counsel.  *Strickland*, 466 U.S. at 689.

24         To establish a Sixth Amendment violation, petitioner must also establish that he

25  suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

26  691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140,147 (2006) (stating that "a violation

27  of the Sixth Amendment right to effective representation is not 'complete' until the

28  defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable

1  probability that, but for counsel's unprofessional errors, the result of the proceeding would

2  have been different.  A reasonable probability is a probability sufficient to undermine

3  confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v.*

4  *Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The *Strickland* standard applies equally to a

5  defendant who has been "represented by counsel during the plea process and enters his plea

6  upon the advice of counsel . . . ."  *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985).  A petitioner

7  who pleads guilty satisfies the prejudice prong by establishing "a reasonable probability that,

8  but for counsel's errors, he would have not pleaded guilty and would have insisted on going

9  to trial."  *Hill*, 474 U.S. at 59.  Petitioner bears the burden of proving prejudice, the mere

10 possibility that he suffered prejudice is insufficient to satisfy *Strickland's* prejudice prong.

11 *Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001).

12        The court may proceed directly to the prejudice prong.  *Jackson v. Calderon*, 211

13 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697).  The court,

14 however, may not assume prejudice solely from counsel's allegedly deficient performance.

15 *Jackson*, 211 F.3d at 1155.

16        On habeas review, the court must give "substantial weight" to the trial judge's

17 analysis of a claim of ineffective assistance.  *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir.

18 2000).  The habeas court considers only whether the state court applied *Strickland*

19 unreasonably:

20         For [a petitioner] to succeed [on an ineffective assistance of counsel
          claim], . . . he must do more than show that he would have satisfied
21         *Strickland's* test if his claim were being analyzed in the first instance,
          because under § 2254(d)(1), it is not enough to convince a federal
22         habeas court that, in its independent judgment, the state-court decision
          applied *Strickland* incorrectly.  Rather, he must show that the [state
23         court] applied *Strickland* to the facts of the case in an objectively
          unreasonable manner.
24
25 *Bell*, 535 U.S. at 698-99 (citation omitted).  *See also*, *Woodford v. Visciotti*, 537 U.S. 19, 24-

26 25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may

27 not issue the writ simply because that court concludes in its independent judgment that the

28 state-court decision applied *Strickland* incorrectly.  Rather, it is the habeas applicant's

1    burden to show that the state court applied *Strickland* to the facts of his case in an

2    objectively unreasonable manner.") (citations omitted).

3        A defendant is incompetent to stand trial if he lacks "sufficient present ability to

4    consult with his lawyer with a reasonable degree of rational understanding" or lacks "a

5    rational as well as a factual understanding of the proceedings against him." *Dusky v. United*

6    *States*, 362 U.S. 402 (1996). The standard for competency to stand trial is "modest."

7    *Godinez v. Moran*, 509 U.S. 389, 402 (1983) (holding that "[r]equiring that a criminal

8    defendant be competent has a modest aim: It seeks to ensure that he has the capacity to

9    understand the proceedings and to assist counsel.")

10        The record in this matter establishes the Petitioner was not "incompetent." Rather,

11   after he was convicted, he began "malingering" symptoms of cognitive deficiencies and

12   psychoses "to avoid dealing with his current legal situation." (docket # 9, Exh. R at 3-5)

13        On the third day of trial, Petitioner's counsel indicated that Petitioner was actively

14   involved in preparing for trial and had helped locate a potential witnesses:

15           Judge, the facts — you know, I spoke to my client last week and we
            were talking about the various witnesses who [were] going to testify, and
16          reviewing the police summaries. I advised him if he had any witnesses, let
            me know. I know that I had asked him previously. And he didn't — couldn't
17          remember—didn't know of anybody that was there that evening. But Jamal
            Moore is a gentleman that he ran into at the Madison Street jail because Mr.
18          Moore is currently in custody currently on unrelated charges. And my client
            told me, know, there is a guy over here that says X, Y, and Z. I said what's his
19          name. He says I don't know his full name; let me talk to him and I will tell you.

20               That was last Thursday or Friday. When I saw him Monday, he gave me
            the booking number. I immediately disclosed that to Ms. Kay.
21
     (Respondents' Exh. B, Tr. 8/14/02 at 159-60)
22
23        Petitioner's participation on the fourth day of trial also weighs against a finding that

24   Petitioner lacked competency to stand trial. Specifically, Petitioner testified in his defense

     and his testimony was coherent. (Respondents' Exh. C, Tr. 8/15/02 at 84-92) Petitioner was
25
     active during cross-examination and challenged the prosecutor. (*Id.* at 92-100) A
26
     defendant's ability to testify cogently at trial without any indicia that he "was not completely
27
     aware of what was going on" is strong evidence of competency. *Boyde*, 404 F.3d at 1167.
28

1       The only suggestion that Petitioner may have lacked competency surfaced several

2   months *after* trial in the form of a letter Petitioner sent to the trial court along with his

3   motion for change of counsel.  (Respondents' Exh. F at 5-7)  Based on that information, the

4   court ordered a presentence mental health examination to determine Petitioner's competency

5   to be sentenced.  (Respondents' Exh. F)  Three doctors examined Petitioner and all three

6   suspected that he was "malingering."  However, the doctors recommended sending

7   Petitioner to Arizona State Hospital for a more comprehensive examination and, if

8   necessary, treatment.  (Respondents' Exh. J at 2-3, Exh. N at 2, 5; Exh. O at 2, 4)  Dr.

9   Jasinski from Arizona State Hospital determined that Petitioner was "malingering"

10   symptoms of cognitive deficiencies and psychoses to "avoid dealing with his current legal

11   situation," and was competent to assist counsel.  (Respondents' Exh. R at 3-5)  Based on Dr.

12   Jasinski's report, Commissioner Vatz found that Petitioner was "malingering symptoms of

13   psychoses and cognitive defects," and that he was competent to be sentenced.

14   (Respondents' Exh. T)

15       On post-conviction review, Petitioner argued that he was "incompetent" to stand trial,

16   and that trial counsel was ineffective for failing to request a competency hearing before trial.

17   (Respondents' Exh. Y)  The trial court denied relief finding that Petitioner failed to allege

18   colorable claims based upon "Defendant's participation in trial, his subsequent ability to

19   recall trial events and the post trial finding of malingering."  (Respondents' Exh. Z at 2)  The

20   court's conclusion that Petitioner was able to recall trial events was based on a March 6,

21   2003 letter Petitioner sent to the trial court two weeks after he had been non-responsive to

22   Dr. Hoffert during his Rule 26.5 examination.  (Respondents' Exhs. CC, Z at 2)  In the

23   letter, Petitioner reviewed trial testimony and cited to personal background issues. (*Id.*)

24       The factual findings of the trial court are presumed correct and are supported by the

25   state court record.  *See* 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735

26   (1990) (stating that a state court finding that a defendant is competent to stand trial is a

27   finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1);

28   *Sandgathe v. Maas*, 314 F.3d 371, 380 (9th Cir. 2002).  Petitioner bears the burden of

1   rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

2   Petitioner has not offered any evidence to overcome the presumption of correctness.  Upon

3   review of the record, the trial court's rejection of Petitioner's claim that trial counsel was

4   ineffective for failing to request a Rule 11 hearing prior to, or during, trial, or moving for a

5   new trial based on Commissioner Vatz' preliminary finding that Petitioner was incompetent

6   to be sentenced, is neither contrary to, nor an unreasonable application of federal law.

7   Counsel's conduct in not requesting a Rule 11 competency hearing, or moving for a new

8   trial, based on Commissioner Vatz' preliminary finding that Petitioner was incompetent to

9   be sentenced was "reasonable."  *See* 28 U.S.C. § 2254; *Strickland*, 466 U.S. at 690-91.

10  There was no basis for counsel to suspect that Petitioner was "incompetent" to stand trial.

11  The state court record, including Petitioner's assistance to counsel and his trial testimony,

12  establish that Petitioner was competent throughout trial.  Counsel is not required to file a

13  frivolous motion.  *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

14      Moreover, Petitioner cannot establish that he suffered any prejudice as a result of

15  counsel's alleged deficient performance.  Both the trial court and Commissioner Vatz found

16  that Petitioner was competent and was malingering symptoms of cognitive deficiencies.

17  (Respondents' Exh. T at 1-2, Exh. Z at 2)  Petitioner has not carried his burden of

18  establishing a "reasonable probability" that had counsel requested a Rule 11 competency

19  hearing or moved for a new trial, Petitioner would have been found incompetent to stand

20  trial or that the result of the proceedings would have otherwise been different.  *Strickland*,

21  466 U.S. at 694.  Accordingly, Petitioner's claim of ineffective assistance fails.

22      **V.  Conclusion**

23      In accordance with the foregoing, the Petition, including the claims raised in the

24  Reply (docket # 10), should be denied because Petitioner's claims are either are procedurally

25  defaulted and barred from federal habeas corpus review or lack merit.

26      Accordingly,

27

28

1          **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas

2   Corpus by Person in State Custody pursuant to 28 U.S.C. § 2254 (docket # 1), as

3   supplemented by his Reply (docket # 10), be **DENIED**.

4          This recommendation is not an order that is immediately appealable to the Ninth

5   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

6   Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

7   parties shall have ten days from the date of service of a copy of this recommendation within

8   which to file specific written objections with the Court.  *See*, 28 U.S.C. § 636(b)(1); Rules

9   72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within

10  which to file a response to the objections.  Failure timely to file objections to the Magistrate

11  Judge's Report and Recommendation may result in the acceptance of the Report and

12  Recommendation by the District Court without further review.  *See United States v.*

13  *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any

14  factual determinations of the Magistrate Judge will be considered a waiver of a party's right

15  to appellate review of the findings of fact in an order or judgment entered pursuant to the

16  Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

17         DATED this 30th day of June, 2008.

18

19

20

21                                    Lawrence O. Anderson
                                       United States Magistrate Judge

22

23

24

25

26

27

28